OPINION
{¶ 1} Defendant-appellant Cincinnati Insurance Company (Cincinnati) appeals the Mahoning County Common Pleas Court's judgment in favor of plaintiffs-appellees William and Karen Teague (collectively referred to as Teague) for $2.5 million. The first issue presented in this appeal is whether the "high-low" settlement agreement entered into between Teague and Cincinnati is appealable. If we answer that question in the affirmative then we must decide whether under Westfield Ins. Co. v. Galatis,100 Ohio St.3d 216, 2003-Ohio-5849, William and/or Karen is an insured under the Cincinnati policy. For the reasons stated below, the judgment of the trial court is reversed and judgment for Teague is entered in the amount of $300,000 pursuant to the "high-low" settlement agreement.
 STATEMENT OF FACTS AND CASE {¶ 2} On June 18, 1999, William Teague was injured in an automobile accident when the car he was riding in crashed into a utility pole. The car was driven by Richard Wright and owned by Thomas Thompkins. Neither Wright, nor Tompkins carried applicable liability insurance to cover the severity of William's damages. At the time of the accident, Karen Teague, William's mother, did not have automobile or homeowner's insurance. However, Karen was an employee of Omni Manor, Inc. (Omni) which maintained a business insurance policy issued by Defendant Motorists Insurance Co. (Motorists) and a professional umbrella liability policy issued by defendant-appellant Cincinnati Insurance Company (Cincinnati). The Motorists policy included UM/UIM coverage of $1 million. Cincinnati's policy provided for $3 million for occurrences in the time period when the accident happened.
 {¶ 3} William and Karen filed a declaratory judgment action seeking UM/UIM coverage against Motorists and Cincinnati under the policies held by Karen's employer, Omni. William sought compensation for his physical injuries and Karen brought a loss of consortium claim. The trial court found that William was an insured under the Motorists policy. A settlement was reached between Teague and Motorists and Teague's claims against Motorists were dismissed. Therefore, Motorists is not a party to this appeal.
 {¶ 4} Cincinnati filed a motion for summary judgment, seeking a determination that it had no UM/UIM coverage liability to Teague. Teague cross-moved for summary judgment claiming as a matter of law the UM/UIM coverage in the Cincinnati policy was available to them. The trial court denied Cincinnati's motion for summary judgment while granting Teague's motion for summary judgment. Cincinnati filed a motion to reconsider; the trial court denied the motion. Cincinnati filed a second motion to reconsider. The trial court granted this motion stating that "genuine issues of material fact remain to be litigated with respect to who is an insured and what vehicles qualify for Uninsured Motorists/Underinsured Motorists (UM/UIM) coverage under the Cincinnati Insurance Company umbrella policy." 7/22/02 J.E. Cincinnati and Teague then entered into a "high-low" settlement agreement. The settlement states that Cincinnati seeks appellate review of the denial of summary judgment and that within 30 days after entry of final judgment by the highest appellate court in which a decision of the action could be had, if decision is favorable to Teague, Cincinnati shall pay Teague $2.5 million, but if the decision is favorable to Cincinnati, then Cincinnati shall pay Teague $300,000. The trial court, incorporating the settlement agreement, ordered final judgment in favor of Teague for the sum of $2.5 million and stayed execution of the judgment pending all appeals. Cincinnati timely appeals raising one assignment of error.
 ASSIGNMENT OF ERROR {¶ 5} "The trial court erred in granting summary judgment in favor of plaintiffs-appellees, determining as a matter of law that plaintiffs-appellees are insureds entitled to um coverage arising by operation of law under the cincinnati umbrella policy."
 {¶ 6} Prior to addressing the merits of the assignment of error, we must first address the appealability question raised by Teague. Teague argues that Cincinnati cannot appeal the trial court's grant of summary judgment for him because that judgment was later reconsidered and nullified by the court when it held that a genuine issue of material fact existed as to who was an insured under the policy. Therefore, Teague contends the grant of summary judgment for Teague is not appealable because the trial court abrogated that ruling which in effect makes that ruling no longer adverse to Cincinnati. Furthermore, Teague contends that Cincinnati consented to the judgment entry finding them liable for $2.5 million instead of going to trial. Appellant then concludes that since a party cannot appeal from a judgment they willingly entered into, the trial court's order is not appealable. Lastly, Teague argues that Cincinnati's reply brief changes the initial argument that the trial court erred in granting summary judgment for Teague to the trial court erred in denying summary judgment for Cincinnati and, as such, the argument should not be addressed since new arguments are not properly raised in a reply brief.
 {¶ 7} Cincinnati rebuts these arguments by stating that the trial court's final judgment entry entering a $2.5 million verdict in favor of Teague effectually determined that William and Karen were insureds under the Cincinnati policy. Therefore, it is an adverse determination for Cincinnati and is appealable. Cincinnati claims that the terms of the settlement agreement clearly explain that Cincinnati entered into the settlement agreement to facilitate an immediate appeal. Also, Cincinnati argues that there may be technical irregularities in the initial assignment of error, but under that assignment of error, Cincinnati consistently maintained that Teague was not an insured as a matter of law.
 {¶ 8} First, we will address whether the reply brief raises new arguments, i.e. that the denial of Cincinnati's motion for summary judgment was erroneous and, thus, should not be considered by this court. The initial assignment of error specifically states that the trial court erred in granting summary judgment for Teague. The specific language that the trial court erred in denying Cincinnati's motion for summary judgment was not stated until the reply brief. A reply brief is not to be used by an appellant to raise new assignments of error or issues for consideration; it is merely an opportunity to reply to appellee's brief. Sheppard v. Mack (1980), 68 Ohio App.2d 95,97; App.R. 16(C).
 {¶ 9} However, the arguments raised under the assignment of error are specific. Cincinnati contends that Teague is not an insured under the policy and the trial court should not have found otherwise. This contention equally applies to how the trial court's grant of summary judgment for Teague was improper and how the trial court's denial of summary judgment for Cincinnati was improper. Additionally, it is important to note that both parties had summary judgment motions filed at the same time: Teague claiming he was an insured and Cincinnati claiming that Teague was not an insured. The granting of one party's motion meant that the other party's motion was automatically denied. Therefore, when Cincinnati claims that the trial court should not have granted summary judgment for Teague, Cincinnati is effectively claiming that the trial court erred in failing to grant summary judgment for it. Thus, the arguments raised in the reply brief are an extension of the argument in the brief. Furthermore, in many instances, this court has held that when an appellant fails to state an assignment of error in its brief, in the interest of justice, we try to determine what the party is arguing. State v.Curtis, 7th Dist. No. 01JE16, 2002-Ohio-3054 (pro se appellant);Tinlin v. White, 7th Dist. No. 01AP0754, 2001-Ohio-3442 (stating both pro se appellant's brief and appellee's brief, filed by counsel, failed to comply with App.R. 16); Neill v.Administrator, Bureau of Workers' Comp., 7th Dist. No. 00CA69, 2001-Ohio-3400 (pro se); Theisler v. DiDomenico,140 Ohio App.3d 379, 2000-Ohio-2620 (pro se); Patterson v. Wal-MartStores, Inc., 7th Dist. No. 99CA261, 2000-Ohio-2574 (stating appellant's brief, filed by counsel, failed to comply with App.R. 16). As such, we will consider the arguments made in the reply brief.
 {¶ 10} Our analysis now turns to whether, in this factual scenario, agreeing to enter into a "high-low" settlement agreement waived Cincinnati's right to appeal any error in the trial court's denial of its motion for summary judgment. It is true that a party may not appeal a judgment to which it has agreed. Leone v. Leone (Feb. 11, 2000), 7th Dist. No. 98CA135, citing Jackson v. Jackson (1865), 16 Ohio St. 163, paragraph one of the syllabus. Furthermore, an order denying a motion for summary judgment is not appealable. Continental Ins. Co. v.Whittington, 71 Ohio St.3d 150, 1994-Ohio-362.
 {¶ 11} However, the Whittington doctrine does not preclude review of the denial of summary judgment where the alleged error in the denial of summary judgment was based purely on a question of law that must be answered without regard to issues of fact.The Promotion Co., Inc. v. Sweeney/Special Events Div.,150 Ohio App.3d 471, 476, 2002-Ohio-6711, at ¶ 15. The trial court denied Cincinnati's summary judgment motion and held that genuine issues of material fact remained to be determined as to who was an insured under the policy. The interpretation of an insurance contract involves a question of law. Leber v. Smith,70 Ohio St.3d 548, 1994-Ohio-361. The determination of whether a person qualifies as a named insured under the policy is a question of law. Stacy v. Nationwide Mut. Ins. Co. (1999),125 Ohio App.3d 658, 669. Thus, the denial of summary judgment was appealable.
 {¶ 12} Moreover, this case is different because it is a "high-low" settlement agreement. The Tenth Appellate District has held that the denial of summary judgment was subject to appeal where the parties entered into a "high-low" settlement agreement where all the issues have been decided is appealable. Ryll v.Columbus Fireworks Display Co., (Sept. 5, 2000), 10th Dist. Nos. 99AP-1061, 99AP-1311.
 {¶ 13} Ryll involved a person being killed by a fireworks display. This City of Reynoldsburg sponsored the display and Truro Township Fire Department provided fire protection. The estate filed suit against both Truro and Reynoldsburg. Reynoldsburg and Truro filed motions for summary judgment arguing that sovereign immunity was applicable to them. While the motions were pending, the parties entered into a "high-low" settlement agreement. If the court held that Reynoldsburg and Truro were immune, they would each pay $100,000 in damages to the decedent's estate, but if they were not immune, they would pay $750,000 and $600,000 respectively to the decedent's estate. The trial court concluded that neither were immune. Reynoldsburg and Truro appealed the decision. The Tenth District held that this entry was appealable. Its reasoning was that the issue of immunity had been determined by the trial court as a matter of law, liability had been determined by the agreement to pay damages, and the extent of the damages had been determined, "in the classical sense of the word, meaning that the end or ends have been established." Id. The court further analogized the settlement to a contract, and stated contracts with open price terms are definite and determined if there is reference to an ascertainable standard. Accordingly, the court reasoned, a "high-low" settlement agreement is also definite and determined since it has an ascertainable standard. Id.
 {¶ 14} Ryll was appealed to the Ohio Supreme Court. However; the Court did not explicitly address the appealability issue. Instead, it reversed the appellate court on sovereign immunity grounds. Ryll v. Columbus Fireworks Display Co., Inc.,95 Ohio St.3d 467, 2002-Ohio-2584. However, the dissent by J. Cook, J. Moyer and J. Stratton acknowledged that the majority's silence as to the appealability question renders a "high-low" settlement agreement that disposes of all issues a final appealable order. Id. at ¶ 50.
 {¶ 15} The matter at hand is similar to the Ryll case. InRyll, if the "high-low" settlement agreement had not been executed and if the court had determined that Reynoldsburg and Truro were immune, neither party would have had to pay damages. Just like in our case, if the court had determined that William and Karen were not insureds under the Cincinnati policy, Cincinnati would not have had to pay any damages. However, in both cases, the parties agreed to acquiesce in paying a certain amount of damages even if they were found not liable in order to have their legal issues reviewed by the appeals court. The consent to the judgment did not prevent the appellate courts (neither the Tenth District, nor the Ohio Supreme Court) from determining the merits of the case.
 {¶ 16} However, having said that, we do recognize that one difference between the two cases is the timing of the settlement agreement. In Ryll, the settlement agreement was reached prior to the trial court deciding the legal issue of immunity. Here, the settlement was reached after the trial court stated that the issue as to who and what vehicles were covered under the policy were factual questions. However, in the final judgment, the trial court, while referencing the settlement agreement, entered judgment in favor of Teague for $2.5 million. It thereby implicitly stated that it believed as a matter of law that William and Karen were insureds under the Cincinnati policy. If it did not believe that Teague was an insured as a matter of law, it could have just as easily entered the judgment in favor of Teague for $300,000, the low end of the "high-low" settlement agreement. Therefore, the trial court's final judgment entry was a legal determination of the liability issue, which thereby made the decision final and appealable in accordance with the Ryll
decision.
 {¶ 17} Thus, given our determination that the judgment entry is appealable, we turn to the issue of whether Teague is considered an insured in the Cincinnati policy under theGalatis holding. In Galatis, the Ohio Supreme Court held that a policy that names a corporation as a named insured for UM/UIM coverage only applies if the employee is acting within the course and scope of employment. Galatis, 100 Ohio St.3d 216,2003-Ohio-5849. Furthermore, the court held that where a policy of insurance designates a corporation as a named insured, the designation of family members of the named insured as other insured does not extend insurance coverage to a family member of an employee of the corporation unless the employee is also a named insured. Id.
 {¶ 18} In the case at hand, William was not an employee of Omni. His assertion of coverage was through his mother, Karen, and through the "family member" language of the policy. However, the insurance policy only names Omni as the named insured. Therefore, in accordance with Galatis, coverage does not extend to William; thus, William is not an insured under Cincinnati's policy. Karen is not an insured under the Cincinnati policy either because her injury did not occur in the scope and course of her employment. Therefore, the trial court's decision that Teague is an insured under the Cincinnati policy is reversed and judgment is entered in favor of Teague for $300,000, in accordance with the "high-low" settlement agreement.
 {¶ 19} In addition to the above arguments, still pending before this court is Teague's motion to strike the affidavit of Michael D. Rossi, Esq. and John S. Coury and their respective exhibits. Therefore, we will dispose of these issues now.
 {¶ 20} The Coury affidavit and exhibits (Coury materials) were attached to Cincinnati's reply brief. Coury was the attorney who argued Scott-Pontzer v. Liberty Mutual Fire Ins. Co.,85 Ohio St.3d 660, 1999-Ohio-292. These materials deal directly with the issue of liability and whether the Cincinnati policy extends coverage to family members of employees. As explained above,Galatis held that family member coverage does not exist unless the employee is also a named insured. In the situation before us, William is clearly not an insured. Therefore, striking the Coury materials will not affect the determination of whether Teague is an insured under the Cincinnati policy. Thus, the Galatis
holding effectively renders this issue moot.
 {¶ 21} Regardless of the above, Teague is correct that the Coury materials should be stricken. The record is devoid of any indication that the Coury materials were submitted to the trial court for consideration. A reviewing court cannot add matter to the record that was not part of the trial court's proceeding and then decide the appeal based on the new matter. McAuley v.Smith, 82 Ohio St.3d 393, 396, 1998-Ohio-402.
 {¶ 22} The Rossi affidavit and exhibits (Rossi materials) were filed separately, but simultaneously with Cincinnati's reply brief. Rossi was Cincinnati's trial counsel. The Rossi materials contain an affidavit from Rossi, a letter from Teague's trial counsel to Rossi, and a copy of the settlement agreement signed by both Teague and Cincinnati.
 {¶ 23} In the motion to strike, Teague admits that the settlement agreement should not be stricken. Therefore, the settlement agreement is not at issue in this argument.[1]
 {¶ 24} However, the remaining two items in the Rossi materials are stricken. The affidavit and the letter were not considered by the trial court and, as such, will not be considered for the first time by this reviewing court. Regardless, the affidavit and the letter convey the same information that is provided in the settlement agreement.
 {¶ 25} For the foregoing reasons, the judgment of the trial court is hereby reversed and judgment of $300,000 is entered in favor of Teague pursuant to the "high-low" settlement agreement.
Donofrio, J., dissents; see dissenting opinion.
DeGenaro, J., concurs.
[1] The settlement agreement was properly made a part of the record in accordance with App.R. 9(E). App.R. 9(E) states that the parties by stipulation may add any omitted material from the record. The parties are agreeing that the settlement agreement should have been a part of the record. The trial court references the settlement agreement in its judgment entry and, as such, it is incorporated to the record by reference.